# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | | |
|---|---|---|
| ROBERT ALAN GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No: 4:16-cv-108 |
| v. | ) | |
| | ) | Judge Steger |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.      Introduction

Plaintiff seeks judicial review pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), of the denial by the Commissioner of the Social Security Administration ("SSA") of his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, 42 U.S.C. §§ 401-434, 1381-1383f.  The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Sixth Circuit [Doc. 17].  For the reasons stated herein, Plaintiff's Motion for Judgment on the Pleadings [Doc. 18] shall be **DENIED,** the Commissioner's Motion for Summary Judgment [Doc. 22] shall be **GRANTED**, and the decision of the Commissioner shall be **AFFIRMED**. Judgment in favor of the Defendant shall be entered.

---

[1] Carolyn W. Colvin was the Acting Commissioner of Social Security when this action was initiated.  Nancy A. Berryhill has since assumed that role.  Accordingly, the names have been changed.  Fed. R. Civ. P. 25(d).

**II.    Background**

**A.  Procedural History**

Plaintiff applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, 42 U.S.C. §§ 401-434, 1381-1383f [Tr. 226-38].  Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner of the SSA.  Plaintiff's claim was denied and he requested a hearing before an administrative law judge ("ALJ") [Tr. 16-19].  On September 9, 2015, following a hearing, the ALJ found that Plaintiff was not disabled [Tr. 20-43].  On September 22, 2016, SSA's Appeals Council denied Plaintiff's request for review [Tr. 1-5].  Thus, Plaintiff has exhausted his administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review.  Plaintiff filed a Complaint in the district court on November 21, 2016.  Subsequently, Plaintiff filed a motion for judgment on the pleadings and the Commissioner filed a motion for summary judgment.  Both motions are ripe for review.

**B.  The ALJ's Findings**

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2015 (Exhibit 3D, p. 1).

2. The claimant has not engaged in substantial gainful activity since October 1, 2011, the amended alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: bipolar disorder; panic disorder with agoraphobia; anxiety disorder and drug and/or alcohol dependence (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant's impairments, including the substance use disorder, meet sections 12.04 and 12.09 of 20 CFR Part 404, Subpart P,

Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

5. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

6. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CPR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

7. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant would be [limited] to understanding, remembering and carrying out simple and low-level detailed work instructions (non-executive level, non-multi-step detailed instructions). The claimant would be limited to simple work-related judgments and short-term goal setting. The claimant would be limited to work which involves maintaining attention and concentration for two-hour increments in the performance of simple and low-level detailed work. The claimant would be limited to infrequent (less than occasionally or about one hour or less per eight hour workday) work changes, gradually introduced.

8. If the claimant stopped the substance use, the claimant would be unable to perform past relevant work (20 CFR 404.1565 and 416.965).

9. The claimant was born on October 2, 1961, and was fifty years old, which is defined as an individual closely approaching advanced age on the alleged disability onset date (20 CFR 404.1563 and 416.963).

10. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

11. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

12. If the claimant stopped the substance use, considering the claimant's

age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

13. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(g), 404.1535, 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

[Tr. 26-36].

## C. Relevant Facts

### 1. Plaintiff's Age, Education, and Past Work Experience

At the time of the hearing before the ALJ on July 27, 2015, Plaintiff was 53 years old [Tr. 47, 54]. He was 49 years old at the time of his alleged onset of disability on October 1, 2011,[2] and he has past relevant work as a machinist [Tr. 54, 80-81]. He completed high school and some college [Tr. 55].

### 2. Plaintiff's Testimony and Medical History

The parties and the ALJ have summarized and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters as relevant to the analysis of the parties' arguments.

---

[2] Plaintiff initially alleged an onset of disability on January 10, 2009. Through counsel, he amended the alleged onset date during the administrative hearing to October 1, 2011 [Tr. 51, 226].

### III.   Analysis

#### A.  Standard of Review

To establish disability under the Social Security Act, a claimant must establish he is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled.  20 C.F.R. § 404.1520.  The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he is not disabled; (2) if the claimant does not have a severe impairment he is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he is disabled; (4) if the claimant is capable of returning to work he has done in the past he is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he is not disabled.  *Id.*  If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step.  20 C.F.R. § 404.1520; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990).  Once, however, the claimant makes a *prima facie* case that he cannot return to his former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he can perform considering his age, education and work experience.  *Richardson v. Sec'y, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner

are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389 (1971); *Landsaw v. Sec'y, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings, they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

The court may consider any evidence in the record, regardless of whether the ALJ cited it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, for purposes of substantial evidence review, the court may not consider any evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is not obligated to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

**B. Discussion**

Plaintiff challenges the ALJ's determination that he was not under a disability, as defined by the Act, from October 1, 2011, the alleged onset date. He presents three issues for review. Those issues will be discussed in the order presented.

>    **1. Whether the ALJ erred in finding Plaintiff was not disabled within the meaning of the Social Security Act, and whether the decision was supported by substantial evidence**

Plaintiff argues that the ALJ failed to weigh properly the evidence in the record concerning his depression and anxiety and that the ALJ overstated the impact of his alcohol use. More specifically Plaintiff makes the following points:

- Plaintiff concedes that he has an extensive history of alcohol abuse; however, he argues that his depression and anxiety trigger his alcohol use. Plaintiff continues to receive treatment at an outpatient mental clinic, where he has been diagnosed with depression and has tried various medications to treat it.

- The ALJ's decision implies that Plaintiff's alcohol use is something he can control, which ignores the reality of alcoholism as a medical condition and a compulsion. Plaintiff's alcohol use is a symptom of an underlying medical condition. Plaintiff argues that the ALJ's focus on his alcohol abuse in her decision reflects a preconceived judgment about Plaintiff and fails to address in detail the severity of Plaintiff's depression and anxiety in the absence of alcohol use.

- The ALJ cited to specific records covering brief periods of improvement to support that Plaintiff did not suffer from a severe impairment during the relevant period, while significant other evidence in the record supports the opposite finding. Plaintiff specifically notes suicidal statements he made on his admission for treatment at Centerstone community mental health center; a statement he made in April 2011 that "I feel like I am going crazy because of all the stress"; and efforts to have him admitted to a mental hospital in September 2012.

- Plaintiff asserts that his primary diagnosis at Centerstone was depressive disorder; that a note in May 2013 indicated that his depression was increasing; and that other treatment notes indicate a "major depressive disorder, recurrent, with severe symptoms." Plaintiff argues that, despite medication, brief periods of respite, and

7

attempts to exercise and seek employment, his depressed mood has continued.

- Plaintiff asserts that the ALJ erroneously determined that Plaintiff's alcoholism increases the severity of his depression, when substantial evidence supports that Plaintiff's alcohol use follows an increase in the severity of his depressed mood.

- Plaintiff also asserts that the ALJ failed to address his Global Assessment of Functioning ("GAF") scores in her decision. Further, he argues that the ALJ ignored his record of treatment at Centerstone. The ALJ also ignored other evidence, including an evaluation by Joe S. Bean, Ph.D., a clinical psychologist, who diagnosed Plaintiff as "Bipolar I Disorder severe, MRE mixed" and noted key issues of anxiety, mood swings, and a chronic pattern of drinking. Instead, Plaintiff argues, the ALJ focused exclusively on the findings of medical consultant Betty Borden, Ph.D., who neither met nor treated Plaintiff.

In response to Plaintiff's arguments, the Commissioner responds that the ALJ properly evaluated Plaintiff's impairments under the agency regulations relevant to the evaluation of drug addiction and alcoholism ("DA&A"), and that substantial evidence supports the ALJ's decision. More specifically, the Commissioner raises the following arguments:

- Consideration of Plaintiff's alcohol use complied with agency regulations, but the ALJ also reasonably evaluated evidence related to Plaintiff's mental impairments when excluding his alcohol use.

- The ALJ acknowledged Plaintiff's diagnoses and treatment for his mental impairments other than alcohol abuse and found them to be severe impairments necessitating work-related restrictions.

- Although the ALJ determined that Plaintiff had some remaining limitations from his mental impairments, she also reasonably found that Plaintiff's brief periods of sobriety reflected an improvement in his mental health symptoms and an ability to maintain some employment.

- The ALJ cited to specific evidence to support her conclusion that Plaintiff's mental health symptoms appeared to correlate with his consumption of alcohol and that, based on her consideration of the evidence as a whole, Plaintiff's impairments absent substance abuse did not meet or equal the requirements of any listed impairment.

- The restrictions included in the ALJ's determination of Plaintiff's residual functional capacity ("RFC") reflect the ALJ's acknowledgement that Plaintiff's other impairments would affect his RFC even without alcohol use.

- The ALJ included a narrative discussion describing how the evidence supported each conclusion and citing to specific medical facts and nonmedical evidence.

- Contrary to Plaintiff's argument, the ALJ discussed specific evidence, including objective medical evidence and assessments from treating and examining sources, to support a conclusion that there was no evidence of significant limitation of mental function consistent with Plaintiff's GAF scores in the absence of alcohol use.

- The ALJ considered Plaintiff's alleged symptoms, found them not entirely credible based on inconsistencies with the record as a whole, and set forth a logical explanation of the effects of Plaintiff's symptoms on his ability to work. In doing so, the ALJ articulated specific evidence, including objective medical evidence, Plaintiff's improvement with treatment and sobriety, his work and other daily activities, and his own inconsistent statements regarding the interplay between his depression and alcohol use.

- After making those points, the Commissioner notes, an individual "shall not be considered to be disabled" under the Act if alcoholism or drug addiction would be a material contributing factor to a determination of disability. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). The regulations provide that, where there is medical evidence of alcoholism or drug addiction, the ALJ must determine whether she still would find the claimant disabled if he stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(1). In making such determination, the ALJ must evaluate which of the claimant's current physical and mental limitations, upon which she based a current disability determination, would remain if the claimant stopped using drugs or alcohol, and then whether any or all remaining limitations would be disabling. *Id*. § 404.1535(b)(2).

The parties ably framed the issues for review. Turning to the record, that Court notes that the ALJ, in her decision, determined that Plaintiff had no severe physical impairments, but that he had bipolar disorder, a panic disorder with agoraphobia, an anxiety disorder, and drug and/or alcohol dependence, and that these impairments were severe [Tr. 26-27]. The ALJ further determined that, including Plaintiff's alcohol dependence, he met listing sections 12.04 and

12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 [Tr. 30]. Plaintiff's mental impairments, including his substance use disorder, caused moderate restrictions in his activities of daily living. These included marked difficulties in maintaining social functioning, marked difficulties maintaining concentration, persistence, and pace, and one to two episodes of decompensation. The ALJ noted that Plaintiff's treatment records indicated he had been unable to maintain any periods of sobriety, and his alcohol abuse had rendered him unable to maintain employment or interact appropriately with others [*Id.*].

The ALJ further determined that, if Plaintiff stopped drinking, his remaining limitations, while still severe, would no longer meet, either singly or in combination, listings 12.04 or 12.09 [Tr. 31]. Without his substance abuse disorder, Plaintiff would have the RFC to perform a full range of work at all exertional levels. On the other hand, he would be able to understand, remember, and carry out only simple and low-level detailed work instructions. Further, he would be limited to simple work-related judgments and short-term goal setting; work requiring attention and concentration for a maximum of two-hour increments in the performance of simple and low-level detailed work; and infrequent (less than occasionally, or about one hour or less per eight-hour work day) work changes, gradually introduced [Tr. 32].

Plaintiff argues that the ALJ exaggerated the nature of his alcohol dependence and failed to weigh properly the evidence of his depression and anxiety as triggers of his alcohol use. Rejecting that argument, I find that the ALJ properly followed the mandates of the Act and corresponding regulations in determining the severity of Plaintiff's impairments and his resulting capacity for work, both with and in the absence of his substance abuse disorder. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. § 404.1535(b). Substantial evidence supports the

ALJ's determination.

More specifically, in her decision, the ALJ made the following determinations:

- Plaintiff had a long history of alcohol abuse, but the record contained no evidence of other mental impairments until 2011, when he was intoxicated, reported thoughts of death and suicidal ideation, and was diagnosed with alcohol dependence and a mood disorder, not otherwise specified [Tr. 28, 439-41, 480].

- In March 2005, Plaintiff reported that he drank two pints of whiskey per day and had done so for the previous ten years [Tr. 27, 330, 798]. The ALJ also noted reports from October 2006 and September 2009 in which Plaintiff reported drinking three pints of rum daily, as well as his history of inpatient detoxification treatments followed by relapses, beginning in 2006 [Tr. 27, 338, 351, 358, 364-66, 405, 408, 411, 414, 423, 433, 798].

- Records from Southern Tennessee Medical Center detail various emergency department visits between 2009 and 2012 for treatment of alcohol intoxication and/or symptoms related to alcohol dependence. (Tr. 27, 444-97].

- Plaintiff was diagnosed with chronic alcoholism and/or alcohol abuse in May and June 2009; was described as intoxicated in April 2011 and January 2012 [Tr. 27, 488, 492, 496-97, 475-76]. Plaintiff's neurological/psychiatric evaluation at that time was unremarkable [Tr. 27, 475-76].

- Plaintiff denied having depression in January 2012; however, in September 2012, he had alcohol in his system and reported having suicidal thoughts, and his mood and affect were described as depressed [Tr. 28, 447-50]. Plaintiff was transferred to Moccasin Bend for a psychiatric evaluation but denied any suicidal or homicidal ideation, indicating that he had said those things because he had been intoxicated [Tr. 28, 500-04]. The ALJ noted the psychologist's opinion at that time that Plaintiff's primary issues were alcohol and drug related [Tr. 28-29, 505].

- Plaintiff requested rehabilitation services for alcohol abuse in June 2012 at Southern Tennessee's emergency department and was discharged with a diagnosis of substance abuse [Tr. 27-28, 464-68].

- Plaintiff was treated at Centerstone for major depressive disorder, recurrent, as well as panic disorder without agoraphobia, mood disorder, and alcohol dependence. He continued to drink alcohol throughout his treatment [Tr. 29].

- Various treatment records from 2012 through 2015 detail Plaintiff's history of

substance abuse punctuated by brief periods of abstinence or cutting down, and corresponding vacillations in his mood [Tr. 28, 458, 554, 575, 595, 627, 634, 667, 721, 724, 727, 1034, 1100].

- Plaintiff reported in October 2012 that his medications were making him "much calmer and less depressed." [Tr. 29, 524].

- A 2013 record indicated that Plaintiff's "attitude and outlook on life drastically changes from optimistic to pessimistic when [Plaintiff] is drinking consistently and heavily" [Tr. 575].

- A record from June 2013, reflects Plaintiff reported that things were going "extremely well" and that he was working and had not had a drink for almost a week.

- A note from August 2013, reflects that Plaintiff reported his depression symptoms had worsened, he had not left home in four days, he was drinking again, and he knew his alcohol use affected his depression [Tr. 29, 749, 753, 756, 766].

- In November 2013, Plaintiff's Centerstone therapist noted that Plaintiff's "drinking issues continue to add to depression issues." [Tr. 29, 711].

- In January 2014, Plaintiff reported that he had been so tired from working that he had been drinking less, which was helping with his depression [Tr. 29, 696].

- In February 2014, Plaintiff had been sober for more than a week and discussed with his clinician the "consequences of returning to drinking alcohol and how it correlates with increase in depression/anxiety/agoraphobia and the loss of past employment" [Tr. 688].

- In May 2014, Plaintiff reported he had been sober for about two weeks and felt "really good." [Tr. 29, 653]. Similarly, Plaintiff reported in December 2014 that he had been sober for nearly a month and also that he could manage his depressive symptoms more effectively [Tr. 29, 1106, 1109]. However, the following month, Plaintiff reported that his depression and anxiety had increased due to the time of year, and the clinician suspected Plaintiff was recovering from a "prolonged binge drinking session, given [his] history," noting that he refused to specify how much alcohol he had consumed since his prior visit [Tr. 29, 1103].

Plaintiff argues that the ALJ failed to consider his record of treatment at Centerstone and, instead, that the ALJ cherry-picked specific records in which Plaintiff experienced brief periods

of improvement in order to find that his impairments were less severe. The Court finds, however, that the ALJ cited to and considered Plaintiff's history of treatment at Centerstone in her decision [Tr. 29]. Moreover, to the extent the ALJ highlighted brief periods of improvement in Plaintiff's mental health record, those citations support the ALJ's determination that brief periods in which Plaintiff stopped or limited his alcohol intake coincided with improvements in his mental impairments [Tr. 28-30]. Additionally, the record indicates that both Plaintiff and his counselors acknowledged the negative effect his alcohol abuse had on his mental impairments.

Dr. Borden's opinion supports the ALJ's determination. Dr. Borden determined that Plaintiff had alcohol dependence as well as a mood disorder/major depressive disorder, a bipolar disorder, and a possible anxiety disorder. He further opined that Plaintiff's impairments resulted in moderate restriction of activities of daily living and marked difficulties maintaining social functioning and maintaining concentration, persistence, and pace [Tr. 30, 1121-22]. Dr. Borden also noted that Plaintiff had not demonstrated any significant periods of sobriety, and that, because alcohol is a central nervous system depressant, Plaintiff's continued alcohol dependence and/or abuse would contribute to his mood disorder and dysfunctional lifestyle [Tr. 30, 1125.]. Although Plaintiff takes issue with the ALJ's reliance on Dr. Borden's opinion, the ALJ did not rely on Dr. Borden's opinion exclusively. Rather, Dr. Borden's opinion supports other evidence in the record.

Plaintiff also argues that the ALJ failed to consider Plaintiff's own testimony that his depression triggers his alcohol use, and his feelings of helplessness and hopelessness are the root cause of his drinking [*See* tr. 71, 76]. Plaintiff has perseverated so long with his excessive drinking that it is admittedly hard to answer this "which came first – the chicken or the egg"

13

question; however, the ALJ relied upon and cited substantial evidence to support her conclusion that Plaintiff's alcohol abuse contributed heavily to his mental health issues. The ALJ explicitly discussed Plaintiff's testimony that he is unable to work with or without the use of alcohol. In doing so, she found that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they conflicted with the RFC [Tr. 33-34]. The ALJ stated that she had considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" based on the relevant requirements. Moreover, the ALJ noted instances in the record in which Plaintiff acknowledged that his drinking affects his depression and anxiety. The ALJ conceded that it was difficult to determine Plaintiff's condition in the absence of alcohol abuse, given the lack of any extended period of sobriety after the alleged onset date; however, she noted that, even without alcohol, Plaintiff's impairments would be severe [Tr. 31].

Plaintiff also contends that the ALJ failed to consider his GAF scores. The ALJ's decision belies that contention. She acknowledged that Plaintiff was assigned a GAF score of 30 in April 2011, when he was intoxicated and diagnosed with alcohol dependence and a mood disorder [Tr. 28-29]. In 2012, he received a GAF score of 40 when he was transferred from Southern Tennessee Medical Center to Moccasin Bend [*Id.*]. The Centerstone records indicated he had GAF scores in the 30-45 range [*Id.*]. The ALJ acknowledged that Plaintiff's GAF scores reflected significant limitations in mental functioning [Tr. 33]. Absent any significant period of sobriety, the ALJ determined that the GAF scores reflected Plaintiff's level of functioning while using alcohol, not during any period of sustained sobriety [*Id.*]. Thus, the ALJ determined that the GAF scores were reasonable and consistent with the finding that Plaintiff's impairments,

including alcohol abuse, met the severity of listings 12.04 and 12.09, but that there was no evidence of significant limitations in mental functioning in the absence of alcohol abuse [*Id.*]. For these reasons, Plaintiff's argument fails.

## 2. Whether the ALJ failed to pose the proper hypothetical question to the Vocational Expert to identify Plaintiff's limitations

Plaintiff argues that the ALJ failed to pose a proper question in the second hypothetical to the vocational expert ("VE"). Specifically, Plaintiff argues that the ALJ included certain physical limitations in the hypothetical, but failed to address any restrictions related to Plaintiff's depression. Plaintiff asserts that his depressive symptoms, noted both in the record and in the GAF assessments, were not considered or included in the hypothetical. Rather, the ALJ focused exclusively on periods when Plaintiff was doing relatively well and experiencing only mild limitations in functioning. In doing so, Plaintiff asserts, the ALJ impermissibly substituted her judgment for that of healthcare professionals.

The Commissioner responds that: (1) the hypothetical posed to the VE included all of the credible restrictions arising from Plaintiff's severe mental impairments, excluding substance abuse; (2) contrary to Plaintiff's assertion, the ALJ was not required specifically to mention depression in either the hypothetical or Plaintiff's RFC; and (3) because the hypothetical was formulated properly, the VE's testimony constitutes substantial evidence supporting the ALJ's decision.

When an ALJ determines a claimant is unable to perform any of his past relevant work, the burden shifts to the defendant to establish that the claimant is able to perform other work. *See Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 571-72 (6th Cir. 2007). Moreover, the

Sixth Circuit has found that substantial evidence may be produced through reliance on a VE's testimony in response to a hypothetical question, so long as the question accurately portrays the claimant's physical and mental impairments. *Id.* at 573. In *Lancaster*, the Circuit Court determined that the hypothetical posed to the VE during the administrative hearing was flawed because the ALJ included in it only "mild" restrictions in the claimant's ability to interact appropriately with the general public, when the ALJ had found in his decision that the claimant's restrictions in this area were "moderate." *See id.* at 572.

In this case, the ALJ posed two hypothetical questions to the VE during the administrative hearing based on evaluations of Plaintiff conducted by state agency medical consultants [Tr. 32, 82]. In the first hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education level, and work history with the functional capacity to work at all exertional levels, as defined by the regulations, but with the following limitations:

> The individual is limited to understanding, remembering, and carrying out simple and low level detailed work instructions. Low level detail work instructions being defined as non-executive level. No multi-step detailed instructions. Individual is limited to simple work related judgments and short term goal setting. The individual is limited to work which involves maintaining attention and concentration for two-hour increments. In the performance of simple, and low level detailed work. And the individual is limited to infrequent work changes gradually introduced. Infrequent being defined as less than occasionally or about one hour or less per eight hour workday.

[Tr. 82-83].

Based on those parameters, the VE testified that Plaintiff could not perform his past work, but that there was other work in the national economy that he could perform, including jobs as a hand packer or store laborer, light assembly work, or machine tender occupations [Tr. 83-84]. The ALJ then posed a second hypothetical assuming the same parameters as the first

16

hypothetical but adding that:

> This individual is also limited to work not on an assembly line or in other fast-paced environments. The individual is able to work but not in close proximity to others because the individual is easily distracted. The individual is limited to no work with the general public and is limited to work that does not require team-oriented tasks and work that involves only occasional task-oriented and superficial interaction with co-workers and supervisor. We're talking about many more mental limitations.

[Tr. 85-86].

Based on the additional criteria, the VE testified that Plaintiff still could perform jobs in the national economy, including machine tender jobs, machine packager jobs, and wrapping machine operator jobs, package sealer machine operator jobs, and most store laborer jobs [Tr. 87-88]. Subsequently, Plaintiff's counsel asked the VE whether jobs would still exist for the individual in the second hypothetical if he had to miss work three or more days per months due to depressive symptoms and/or anxiety [Tr. 90-91]. The VE said jobs would still exist, but the individual would not be able to sustain competitive employment [Tr. 91].

As the ALJ noted in her decision, state agency psychologist, Karen Lawrence, determined that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions, and that Plaintiff could understand and perform simple, detailed, non-multi-step tasks [Tr. 32, 106-07]. She found that Plaintiff was moderately limited in his ability to maintain attention and concentration, perform activities within a schedule, maintain regular attendance and be punctual, sustain an ordinary routine without special supervision, and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace [*Id*.]. The consultant opined that, despite these limitations, Plaintiff remained able to persist with simple and detailed tasks; maintain consistent

pace with a reasonable number and length of rest periods; maintain attention and concentration for two-hour intervals for simple and detailed, but not multi-step detailed, tasks; adapt to gradual infrequent changes; and set short-term goals [*Id.*]. A second state agency psychologist affirmed that assessment on reconsideration [Tr. 32, 118-19]. The ALJ stated that she gave significant weight to the opinions of the two state agency consultants in her determination of Plaintiff's RFC in the absence of his alcohol use [Tr. 32].

Although Plaintiff argues that the ALJ included certain physical restrictions, but failed to include restrictions to account for his depression and anxiety, the restrictions included in the hypotheticals all relate to the mental restrictions determined in the RFC. Plaintiff fails to specify what additional restrictions should have been included to account for his depression and anxiety. In the administrative hearing, Plaintiff's counsel questioned the VE regarding the additional restriction of missing work three or more times per month due to anxiety/depression, but the record does not indicate that such a restriction would be required in the absence of Plaintiff's alcohol use, nor does Plaintiff assert that it should have been included.

Plaintiff asserts that the Circuit Court's decision in *Lancaster* mandates reversal in his case; however, in *Lancaster*, the hypothetical question posed to the VE directly contradicted the ALJ's findings in the RFC. That is not the case here. The ALJ's first hypothetical directly tracks the RFC, and the second hypothetical contains additional restrictions [Tr. 32, 82-86]. Likewise, the ALJ's RFC relies on, and comports with the assessments of state agency consultants and is supported by substantial evidence in the record as a whole.

Plaintiff asserts that the ALJ "seems" focused exclusively on instances in which Plaintiff was doing relatively well and suffered only mild limitations in functioning, and that the ALJ

18

failed to consider Plaintiff's GAF scores or the frequent notations in Centerstone records of Plaintiff's depressive symptoms. In doing so, Plaintiff simply reiterates his prior arguments regarding the ALJ's determination. In any event, the ALJ found that, even absent his alcoholism, Plaintiff's mental impairments caused more than a minimal impact on Plaintiff's ability to perform basic work activities, and thus, were severe [Tr. 31]. Moreover, despite having no severe physical limitations – a finding Plaintiff does not dispute – the ALJ included, both in the hypothetical and in Plaintiff's RFC, significant restrictions in Plaintiff's ability to work based on his mental impairments. Accordingly, his argument fails.

### 3. Whether the ALJ failed to elicit an explanation from the Vocational Expert regarding inconsistency between the Vocational Expert's testimony and the Dictionary of Occupational Titles.

Plaintiff argues that the ALJ had an affirmative duty to inquire whether the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT") and, if so, to obtain a reasonable explanation for any inconsistency. He asserts that the ALJ failed to do so in his case. Plaintiff concedes that the ALJ asked the VE at the hearing outset to alert her if his opinion varied from the information in the DOT; however, Plaintiff asserts that the regulations require more than a cursory comment by the adjudicator. He argues that, because the ALJ's inquiry was insufficient, the case should be reversed and remanded.

The Commissioner responds that the ALJ fully satisfied the regulatory requirement to identify and obtain a reasonable explanation for any conflicts between the VE's testimony and the DOT because the ALJ asked the VE whether his testimony was consistent. The Commissioner further asserts that the VE clearly understood the admonishment. To illustrate this point, he indicates that the VE alerted the ALJ that the machine tender jobs he identified as

performable by Plaintiff differed from those in the DOT because those jobs were now more automated and required little input from the operator. The Commissioner notes that the ALJ discussed this testimony in her decision, observing that the VE's testimony, which the ALJ found reliable, was based on his experience.

Before the ALJ posed the aforementioned hypothetical questions to the VE in the administrative hearing, she stated: "I'm going to give you one quick instruction. If during the course of your testimony you give us an opinion which varies from the information in the Dictionary of Occupational Titles, if you could please alert us to that, all right?" [Tr. 79-80]. The VE responded, "Yes, your honor." [Tr. 80]. Subsequently, when the VE testified that machine tender occupations were among those available in the national economy for a hypothetical individual similarly situated to Plaintiff, he stated:

> These machine tender jobs do differ from the DOT definitions and the DOT definitions as revised no later than 1991 and these jobs in the time have become much more automated and require very little input from the worker. The worker mainly monitors the operation of the automatic machine … And my testimony in that regards is based on my observation of these jobs as they are performed, interviewing people who have performed these jobs and listening to people testify about the jobs in Social Security disability hearings.

[Tr. 84-85].

Under SSR 00-04p, the ALJ, before relying on evidence from a VE to support a disability determination, must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs … and information in the [DOT]" and "[e]xplain in the determination or decision how any conflict that has been identified was resolved. SSR 00-04p.

As the Commissioner argues, the ALJ clearly requested that the VE alert her to any differences between his testimony and the DOT in the administrative hearing [*See* tr. 79-80].

Moreover, the ALJ's admonishment was clearly effective. The VE not only agreed to alert the ALJ to any differences, but he did so, noting that the machine tender job – offered as an example of work Plaintiff could perform – conflicted with the DOT definition. The VE observed that, based on his own experience and observations, the machine tender job had become more automated over time and require little input from operators [*See* tr. 84-85]. In her decision, the ALJ reiterated the VE's testimony that the machine tender jobs differed from those identified in the DOT because the jobs are now much more automated and require little operator input [Tr. 36]. The ALJ also noted that the VE had based his testimony on his experience as a VE, which the ALJ considered a reliable basis for his variance of opinion [*Id*.]. Plaintiff argues that the ALJ should have done more, but he cites no additional differences that the ALJ failed to elicit from the VE or discuss. Thus, this argument fails.

## III.     Conclusion

Having carefully reviewed the administrative record and the parties' briefs filed in support of their respective motions, the Plaintiff's Motion for Judgment on the Pleadings [Doc. 18] shall be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 22] shall be **GRANTED**, and the decision of the ALJ shall be **AFFIRMED**. Judgment shall be entered in favor of the Defendant.

   **ENTER**.


                                        s\ *Christopher H. Steger*
                                        UNITED STATES MAGISTRATE JUDGE